# NO. 12-23-00001-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE* | § | *APPEAL FROM THE 217TH* |
| *COMMITMENT OF* | § | *DISTRICT COURT* |
| *MICHAEL MCGARITY* | § | *ANGELINA COUNTY, TEXAS* |

---

## *MEMORANDUM OPINION*

Michael McGarity appeals his civil commitment following the trial court's adjudication that he is a sexually violent predator. In two issues, McGarity contends that the evidence is legally and factually insufficient to support the trial court's judgment. We affirm.

### BACKGROUND

McGarity is an inmate, who currently is serving two twenty-five-year concurrent sentences for aggravated sexual assault of a child. On November 23, 2021, the State filed a petition seeking to have McGarity adjudicated a sexually violent predator and committed for treatment and supervision pursuant to Chapter 841 of the Texas Health and Safety Code. A jury found beyond a reasonable doubt that McGarity is a sexually violent predator. On that basis, the trial court entered a final judgment and order of civil commitment. McGarity filed a motion for new trial, which was overruled by operation of law. This appeal followed.

### EVIDENTIARY SUFFICIENCY

In his first and second issues, McGarity argues that the evidence is neither legally nor factually sufficient to support the jury's finding that he is a sexually violent predator.

**Standard of Review and Governing Law**

Texas Health and Safety Code Chapter 841 provides for the involuntary "long-term supervision and treatment of sexually violent predators" meeting specified statutory criteria. TEX. HEALTH & SAFETY CODE ANN. § 841.001 (West 2017); *In re Commitment of Stoddard*, 619 S.W.3d 665, 669 (Tex. 2020). To meet its burden of proof in a sexually violent predator civil commitment case, the State must prove beyond a reasonable doubt that a person is a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.062 (West Supp. 2022). A person is considered a "sexually violent predator" if he (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West 2017). A "behavioral abnormality" is defined as a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person. *Id.* § 841.002(2) (West 2017). "'Predatory act' means an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5). And "sexually violent offense" includes the offense of aggravated sexual assault of a child. *See id.* § 841.002(8)(A); TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B) (West 2019). If, after a trial, a trial court or jury determines that a person is a sexually violent predator, the judge must commit him for treatment and supervision. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.081(a) (West 2017).

Because of the heightened burden of proof, appellate review of the legal sufficiency of the evidence requires deciding "whether, after viewing the evidence in the light most favorable to the [petitioner], any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." *See In re Commitment of Stoddard*, 619 S.W.3d at 675 (internal quotation omitted). "It is the fact finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts." *In re Commitment of Stuteville*, 463 S.W.3d 543, 544 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.— Beaumont 2002, pet. denied) (stating fact finder may resolve conflicts and contradictions in evidence "by believing all, part, or none of the witnesses' testimony").

The factual sufficiency standard requires deciding "whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is" a sexually

violent predator. *See **In re Commitment of Stoddard***, 619 S.W.3d at 668. "[T]he appellate court may not usurp the jury's role of determining the credibility of the witnesses and the weight to be given their testimony . . . [and] must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." ***Id.*** "If the remaining evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true, the evidence is factually insufficient." ***Id.***

"[I]n both types of review the appellate court may not ignore 'undisputed facts that do not support the finding' and must otherwise presume the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." ***Id.*** at 676 (quoting ***In re J.F.C.***, 96 S.W.3d 256, 266 (Tex. 2002)). But the two types diverge over how they treat "disputed evidence that a reasonable factfinder could not have credited in favor of the finding." ***Id.*** "In a legal sufficiency review, the court disregards such evidence in determining whether a rational factfinder could find the statutory . . . elements met beyond a reasonable doubt." ***Id.*** But "[i]n a factual sufficiency review, the court considers whether that evidence, in light of the entire record, is so significant that the factfinder could not have determined beyond a reasonable doubt that the statutory elements were met." ***Id.***

## Statutory Construction

As part of his first issue, McGarity contends that our analysis turns on the meaning of a statute, which is a question of law we review de novo. *See, e.g.*, ***Flores v. State***, 620 S.W.3d 154, 158 (Tex. Crim. App. 2021) (stating that "[s]ometimes, a sufficiency of the evidence issue turns upon the meaning of the statute under which the defendant is being prosecuted . . . [, and in] those situations, after viewing the evidence in the light most favorable to the verdict, we ask if certain conduct actually constitutes an offense under the statute, which is a question of law we review de novo"). McGarity correctly argues that this appeal turns on the statutory definition of "behavioral abnormality." His argument continues that this phrase is ambiguous, we should construe it in light of the legislative history, and accordingly, such an analysis inevitably leads to the conclusion that Chapter 841 was not intended to apply to him.

McGarity specifically asserts that the case law sheds little light on what the "behavioral abnormality" element means and, therefore, resolution of this question requires a judicial construction of the "behavioral abnormality" element according to traditional rules of statutory

construction. He argues that, under these traditional rules, this Court should consider the Legislature's findings that Chapter 841 is intended to apply to "a small but extremely dangerous group of sexually violent predators," a group to which he does not belong. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.001. We disagree with McGarity's analysis.

The Texas Supreme Court has clarified that the two statutory elements— repeat sexually violent predator and behavioral abnormality—are the only factors courts should consider in a sufficiency review. *See In re Commitment of Stoddard*, 619 S.W.3d at 676–78. It explained that the "'small but extremely dangerous group' language, contained in the Act's legislative findings, is not part of the statute's definition of 'sexually violent predator' and [is] not an element the jury [is] required to find." *Id.* at 677 (concluding appeals court erred in finding evidence insufficient where it found, among other things, that appellant was not part of small but extremely dangerous group referenced in legislative findings).

Other Texas courts have rejected similar arguments. *See, e.g.*, *In re Commitment of Atchison*, No. 01-22-00424-CV, 2023 WL 4003066, at *7 (Tex. App.—Houston [1st Dist.] June 15, 2023, no pet. h.) (mem. op.) (dismissing request to consider whether appellant was part of "small but extremely dangerous group" mentioned in legislative findings in light of holding in *Stoddard*); *see also In re Commitment of Tryon*, 654 S.W.3d 29, 38 (Tex. App.—Eastland 2022, pet. denied) (noting "*Stoddard* has clearly foreclosed" argument that "behavioral abnormality" element must be construed as incorporating Act's legislative findings and legislative history); *In re Commitment of Ausbie*, No. 14-18-00167-CV, 2021 WL 1972407, at *11 (Tex. App.—Houston [14th Dist.] May 18, 2021, pet. denied) (mem. op.) (declining request, in light of *Stoddard*, to examine legislative history to construe intended meaning of "behavioral abnormality"). We agree with the reasoning in these opinions and likewise hold that *Stoddard* forecloses McGarity's argument that the evidence is legally insufficient to support a finding that he meets the legislatively intended definition of "behavioral abnormality."

**The Evidence at Trial[1]**

The Texas Department of Criminal Justice (TDCJ) retained Dr. Darrel Turner, a psychologist, to evaluate McGarity and determine whether he has a behavioral abnormality. Dr. Turner has a bachelor's degree in psychology, a master's degree in counseling psychology, and a doctorate in clinical psychology with a focus in forensic psychology. He completed a predoctoral internship with the Federal Bureau of Prisons and worked as a staff psychologist at a United States federal penitentiary in Pollock, Louisiana. Dr. Turner is licensed in Texas and Louisiana. The jury was also provided his curriculum vitae.

As the jury viewed the legal definition of "behavioral abnormality," Dr. Turner explained his understanding of its meaning. He explained that his job as a forensic evaluator is to provide expert testimony to assist the factfinder, in this case the jury, in reaching its decision. Dr. Turner told the jury that he has performed over 400 behavioral abnormality evaluations in the past ten years. Dr. Turner explained that he performed his evaluation of McGarity in accordance with his training as a psychologist and within the acceptable standards within the field of forensic psychology.

According to Dr. Turner, there is no test that can definitively determine whether someone has a behavioral abnormality. His methodology for conducting a behavioral abnormality evaluation consists of a review of the individual's records (court documents, police investigative documents, statements from the individual and victims, medical records, prison records, and criminal history information), an interview, evaluation, and testing of McGarity, from which he then compiles all the information to form an ultimate opinion, if possible. He testified that he also used research related to sexual recidivism and reviewed McGarity's subsequent deposition in forming his opinion in this case. Dr. Turner ultimately concluded that it is his opinion that McGarity suffers from a behavioral abnormality that predisposes him to engage in sexually violent acts.

---

[1] In the instant case, McGarity testified that he currently is serving sentences on two convictions for aggravated sexual assault of a child. The trial court admitted a judgment into evidence demonstrating McGarity's convictions. Therefore, the record reflects that McGarity is a repeat sexually violent offender. *See* TEX. HEALTH & SAFETY CODE § 841.002(8)(A) (West 2017); TEX. PENAL CODE § 22.021(a)(1)(B), (a)(2)(B) (West 2019). Neither party disputes that the first element is satisfied. Accordingly, only the second element is disputed.

*History of Prior Sexually Violent Crimes*

McGarity testified that he had a normal childhood, but he began abusing alcohol and marijuana in his twenties. He abused both substances at the time of the offenses and continued using them until he was sent to prison. He experienced at least two "black out" moments. He has not used either substance in prison. McGarity has not completed any treatment for substance abuse issues. Due to the length of his sobriety, McGarity does not believe he needs treatment for substance abuse. However, when asked why he has not imbibed, he explained that the alcohol available in prison is dangerous to consume because it is made in prison, of poor quality, and can result in serious health problems.

At the time of the underlying offenses, McGarity's live-in girlfriend had a three-year-old son. Although McGarity remembers no details concerning the incidents, police records indicate that McGarity began sexually abusing this young boy in 2000 and continued abusing the boy for several weeks. McGarity testified that it was possible the police records are accurate. McGarity gave a statement to the police when he was arrested for sexually abusing the boy. The statement related that McGarity and the boy were bathing together and the boy landed on McGarity's lap. McGarity stated it is possible that his penis entered the boy's anus at that time, and that his penis went inside of the boy's mouth. At the time of this civil trial, McGarity had no recollection of ever taking a bath with the boy and had no idea why he might have offended against him.

McGarity also has a daughter. When she was about eighteen months old, McGarity sexually abused her. As with the other offense, McGarity had no independent memory of that crime. In the statement McGarity gave to police, he admitted penetrating the girl's anus and vagina, maybe more than once, while cleaning her. He explained to this civil jury that he was just "too rough" when cleaning his daughter. However, McGarity admitted it is possible he did these things to his daughter with sexual intent. Also, according to the records, McGarity's acts caused his daughter anal and vaginal tearing. At the same time the tears were found, it was also discovered that she had a yeast infection in her throat.

McGarity was convicted for aggravated sexual assault against his daughter and against his girlfriend's son. He was sentenced to twenty-five years in prison for each count. McGarity admitted it was possible that he sexually offended against other children during other blackout moments. He testified at this civil commitment trial that he does not now, nor has he ever, had a problem with sex.

6

McGarity's future plan, should he be released, is to stay away from children so that he is not again accused of sexual abuse. McGarity testified that he would be placed in a high-risk situation if someone brought alcohol, marijuana, or certain magazines to his home, and that certain television shows could also present high-risk situations for him. He explained that being around children would be high risk because then accusations could be made. Although McGarity believed children would be safe around him, he believed that he is not safe around them. When asked whether his sexual offending occurred because of his drug and alcohol abuse, McGarity responded, "I won't want to speculate, but it had most likely something to do with it." McGarity testified that he had no idea why he sexually offended against the children. He explained that it might have been for revenge against his girlfriend for neglect.

*Risk Factors*

Dr. Turner explained that research-based risk factors show whether a sex offender is at a higher risk of reoffending sexually than the average sex offender for whom the factors are not present. Dr. Turner stated that academic research reveals the two largest risk factors for sexually reoffending are having sexually deviant interests and an antisocial personality. Sexual deviance is a chronic sexual attraction or drive that requires victimizing another person to satisfy. According to Dr. Turner, McGarity is sexually deviant. He has a severe lack of insight into his sexual attraction to very young children and his risk to reoffend in the future. Dr. Turner bolstered this conclusion with McGarity's characterization of a three-year-old child as possibly sexually promiscuous. Dr. Turner believes that McGarity's sexual deviance is evidence that his emotional or volitional capacity has been affected as required by the statute.

McGarity also has behaviors consistent with an antisocial personality. Dr. Turner explained that the academic research shows that a person with both a sexual deviance and an antisocial personality are at an especially increased risk for reoffending. He described McGarity as lacking remorse and empathy, and focusing on self-satisfaction, conning, manipulative, and lying behaviors. Dr. Turner testified that the research shows sex offenders who displace personal responsibility and blame amnesia or blackouts ignore the underlying attractions that made them offend. According to Dr. Turner, people like McGarity, who accept no responsibility and feel no remorse or empathy, have a "seriously compromised" ability to not reoffend.

Risk factors Dr. Turner identified from McGarity's offenses include: (1) offending against very young children; (2) offending against a male; (3) offending while intoxicated; (4)

reoffending against the same children; (5) offending both inside and outside of the family; (6) progressing from touching to penetrating; and (7) grooming the children not to disclose the abuse.

Dr. Turner further testified that if McGarity returns to substance abuse, his risk of sexually reoffending will drastically increase. He acknowledged that many people become very intoxicated and never sexually offend.

*Positive and Protective Factors*

Positive factors can prevent a person's risk of reoffending from increasing. Protective factors decrease a person's risk of reoffending. McGarity's use of prison programs and his behavior in prison are positive factors. McGarity completed numerous vocational and self-help classes and worked several different jobs while incarcerated. McGarity attended the prison's four-month sex offender education program. Through this program and other prison programs, McGarity learned that he can remove himself from undesirable situations, and through his training, he has more to offer the world than just being a sex offender. However, when McGarity was interviewed in 2021 for the sex offender treatment program, Dr. Turner noted he completely denied his offenses and blamed his girlfriend for falsely accusing him. Based on McGarity's deposition, it appears that he learned in treatment to be aware of his surroundings and his thoughts. McGarity's trial testimony—that he can become intoxicated and be around children and the children will be safe—showed Dr. Turner "how little he took away" from the short program.

McGarity's age of fifty-one is also a protective factor. Advanced age is generally protective for sexual offenders, but Dr. Turner explained that this is less so for those who offend against children.

McGarity intends to live with his younger brother, who believes McGarity is innocent of all charges. Family support is generally protective, but McGarity's family believes that he is innocent. Members of McGarity's family wrote letters to TDCJ, believing their own children are safe around him. Dr. Turner believes this fact negates the protective factor, and he stated that if they do not believe what McGarity did, they will not prevent McGarity from reoffending.

McGarity received no major disciplinary actions while in prison and only two minor infractions, the most recent of which occurred in 2004.

Nevertheless, Dr. Turner opined that McGarity's positive and protective factors are not enough to counter the clear evidence of his behavioral abnormality.

*Diagnoses*

Using the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM), Dr. Turner made diagnoses of McGarity. Dr. Turner stated that the statutory definition of "behavioral abnormality" does not require a DSM diagnosis, and similarly, a "behavioral abnormality" is not a diagnosis in the DSM.

Dr. Turner assigned McGarity a "provisional" diagnosis of pedophilic disorder, meaning there is very strong evidence of the disorder. In this case, the diagnosis is provisional because the diagnosis requires proof spanning a period of at least six months. The evidence against McGarity spans several months, but less than six months. Dr. Turner testified that McGarity's denials of sexual attraction to children does not negate him being a pedophile. Dr. Turner opined that McGarity's repeated offending against two very young children is strong evidence that he has a pedophilic disorder. He related that the condition is chronic and lifelong.

McGarity also presents adult antisocial personality behaviors. Antisocial people have no regard for the rights of others. They break the laws and rules of society and often end up in prison. To make the diagnosis of antisocial personality disorder, there must be evidence of a conduct disorder prior to the age of fifteen. Although there was some evidence of McGarity's antisocial behavior at an early age, there was not enough for Dr. Turner to make the full diagnosis. McGarity's substance abuse was prolific. His work history was sporadic. According to Dr. Turner, McGarity's refusal to take responsibility for his actions, and his efforts to lie and talk his way out of taking responsibility for them, are current evidence of his antisocial personality.

Dr. Turner diagnosed McGarity with severe alcohol use disorder and severe cannabis use disorder, both in sustained full remission. McGarity's extended sobriety does not lower his risk of relapse once he is returned to normal society. The relapse rate after treatment is over fifty percent. McGarity has not had any treatment, which Dr. Turner concluded makes him even more likely to relapse.

*Testing*

Dr. Turner utilized the Static-99R, an actuarial measure based on risk factors. It does not consider all risk factors and the authors of the instrument recommend that evaluators also

9

consider other factors. Dr. Turner testified that the Static-99R is a helpful tool and an initial gauge, not a final answer. It does not test for a behavioral abnormality.

Dr. Turner's conservative score for McGarity was a zero, which places him in the group at below-average risk for being rearrested or reconvicted for another sexual offense. Offending against very young children, as McGarity did, is considered lower risk, but Dr. Turner said that this may just be because of a lower rate of reporting for sexual crimes against very young children. The Static-99R does not consider: a person's diagnoses, the ages of the victims, the degree of violence accompanying the sexual assaults, substance abuse, patterns of abuse, or lack of insight. For example, Dr. Turner related the flaws in the Static-99R when he proclaimed that even if McGarity were to announce his intent to molest the first child he encounters, his score on the Static-99R would not change.

Dr. Turner also utilized the Hare Psychopathy Checklist Revised, which measures a person's degree of psychopathic traits. McGarity's psychopathic traits are listed in the previous discussions about his antisocial personality. McGarity received a score of nineteen, indicating he is not a true psychopath.

### Behavioral Abnormality

Dr. Turner opined that McGarity has a behavioral abnormality that makes him likely to engage in additional predatory acts of sexual violence to the extent that he is a menace to others. He explained, "I'm basing that on my education, training and experience having done so many of these, and done so much work with sex offenders in general, and I am talking about that likelihood and the probability based on what the history is and the current functioning." Dr. Turner opined that McGarity is at high risk to sexually reoffend—significantly higher than the average sex offender.

## Discussion

McGarity contends that the evidence is legally and factually insufficient to support the jury's finding that he is a sexually violent predator because of his advanced age, he is not a psychopath, and the State could not prove he has a pedophilic disorder.

First, we note that age is not mentioned in the Act. "[N]o court has the authority, under the guise of interpreting a statute, to engraft extra-statutory requirements not found in a statute's text." *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 305 (Tex. 2019). At the time of trial, McGarity was fifty-one years old. McGarity's age does not negate his behavioral abnormality.

10

*See In re Commitment of Tryon*, 654 S.W.3d at 41 (holding advanced age, standing alone, is not sufficient to reverse the jury's verdict); *In re Commitment of Fielding*, No. 08-22-00026-CV, 2022 WL 17485580, at *9-10 (Tex. App.—El Paso Dec. 7, 2022, no pet.) (mem. op.) (holding evidence factually sufficient when expert explained why he rejected Fielding's advanced age as protective factor); *In re Commitment of Delarosa*, No. 03-21-00541-CV, 2022 WL 3403347, at *8-9 (Tex. App.—Austin Aug. 17, 2022, no pet.) (mem. op.) (finding evidence factually sufficient despite Delarosa's advanced age). McGarity admitted that he is still a sexual person, and that he masturbates and has sexual fantasies, including "[s]light bondage" fantasies.

As to his second argument, a finding of psychopathy is not required for civil commitment. The statute requires the initial evaluator to test for psychopathy. TEX. HEALTH & SAFETY CODE ANN. § 841.023(a) (West 2017). However, there are no guidelines for subsequent evaluators and no requirements of any particular testing results. *See In re Commitment of Hebert*, 578 S.W.3d 154, 159 (Tex. App.—Tyler 2019, no pet.) (holding psychopathy not a requisite finding in sexually violent predator civil commitment case); *In re Commitment of Hutyra*, No. 14-17-00669-CV, 2018 WL 3911136, at *6 (Tex. App.—Houston [14th Dist.] Aug. 16, 2018, pet. denied) (mem. op.) (same). There is no authority to support McGarity's position that, because he is not a psychopath, he cannot be civilly committed as a sexually violent predator.

Finally, McGarity contends that because the State could not prove he has a pedophilic disorder, as defined by the DSM, the evidence is insufficient. However, the statute does not require a DSM diagnosis. Our sister courts have rejected the argument that an expert's failure to make a DSM diagnosis renders the evidence legally and factually insufficient. *See In re Commitment of Dever*, 521 S.W.3d 84, 87 (Tex. App.—Fort Worth 2017, no pet.); *In re Commitment of Atchison*, 2023 WL 4003066, at *7 (rejecting similar insufficiency argument that, because Dr. Turner's behavioral abnormality determination rested largely on "provisional" diagnosis of antisocial personality disorder, which does not fully satisfy DSM criteria for disorder, State could not fully prove basis upon which Dr. Turner relied resulting in factually insufficient evidence). The Act requires *what* the State must prove, not *how* the State has to prove it. *In re Commitment of Dever*, 521 S.W.3d at 87. This conclusion is supported by the Texas Supreme Court's explanation that "[a] medical diagnosis of a person's mental health may certainly inform an assessment of whether he has a . . . behavioral abnormality, but the principal

11

issue in a commitment proceeding is not a person's mental health but whether he is predisposed to sexually violent conduct." ***In re Commitment of Bohannan***, 388 S.W.3d 296, 306 (Tex. 2012); *see **In re Commitment of Lewis***, 495 S.W.3d 341, 347 (Tex. App.—Beaumont 2016, pet. denied) (reasoning that "a mental disorder is not a prerequisite to commitment" under sexually violent predator commitment statute).

It is solely the role of the jury to determine the weight and credibility to assign the evidence. ***In re Commitment of Stoddard***, 619 S.W.3d at 677. Although the jury may have considered McGarity's age, lack of psychopathy, and lack of full diagnosis for a pedophilic disorder, the jury still determined that McGarity is a sexually violent predator. We do not substitute our judgment for the jury's. *See **id.***

The jury had before it the testimony of a man convicted of two counts of aggravated sexual assault, one for a three-year-old boy and another for his eighteen-month-old daughter. There were also allegations of McGarity committing other sexual assaults against both children. McGarity told the police that he might have used his penis to penetrate the boy's anus and mouth. McGarity also told the police that he might have used his fingers to penetrate his daughter's anus and vagina on more than one occasion. McGarity told the jury that he could not remember committing the offenses. Despite his testimony that he may have committed these acts, and maybe similar acts to other children that were never reported, he believes he is not a danger to children. Even after completing a sex offender education program, McGarity declared his problems were limited to drugs and alcohol, and that the allegations were made by a vengeful girlfriend. He further testified that it was possible that he committed these acts, and that if he committed the offenses against the children, he has no idea why.

The jury also had before it Dr. Turner's testimony and opinion. Dr. Turner explained the allegations, the associated risk factors, positive factors, and protective factors for McGarity. Dr. Turner explained his diagnoses and his provisional diagnoses of McGarity. Dr. Turner explained the tests he used and explained his interpretations of the instruments. Ultimately, Dr. Turner opined that McGarity has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Turner opined that McGarity is at high risk to sexually reoffend—significantly higher risk than the average sex offender.

12

**Summation**

After reviewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(2), 841.003(a); *see In re Commitment of Stoddard*, 619 S.W.3d at 675. Furthermore, after reviewing the entire record, we cannot conclude that there is any contrary evidence so significant that the factfinder could not have determined beyond a reasonable doubt that the finding was true. *See id.* at 668. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's finding and the judgment granting commitment. *See id.* at 678.

McGarity's first and second issues are overruled.

**DISPOSITION**

Having *overruled* McGarity's two issues, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered June 30, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 30, 2023**

**NO. 12-23-00001-CV**

**IN RE COMMITMENT OF MICHAEL MCGARITY,**

Appeal from the 217th District Court
of Angelina County, Texas (Tr.Ct.No. CV-01468-21-11)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J. and Bass, J.*